### COUTANT *v.* CATLIN and others.

In estimating and awarding the damages to the owners of lands required for opening and widening streets in the city of New York, the commissioners of estimate and assessment should consider separately the distinct existing interests in each portion of such lands, (*e. g.* those of landlord and tenant,) and make a separate award of the damages to each.

Where their report shows such a separate award, neither party after its confirmation, can impeach its accuracy or have it modified, by showing any error or omission.

But where the report awards all the damages to one of several parties interested, and there is no award to either of the others; it is competent for the latter to prove their interest, and recover from the former their proportion of the award.

*Held,* accordingly, between a landlord, and a tenant who was entitled to remove his buildings at the end of his term, where the improvement required the buildings to be demolished, and a single award for the whole damages was made to the landlord; it appearing conclusively that a specific part of the damages was assessed by the commissioners for the buildings.

A trustee in whom such an award to a married woman had become vested for her benefit, will not be subjected to costs, although unsuccessful in maintaining her right to retain it.

March 5 ; April 30, 1845. (Also Dec. 2, 1845 ; Jany. 3, 1846.)

ON the tenth day of April, 1810, Nicholas William Stuyvesant

demised to the complainant three vacant lots of ground at the southeast corner of the Bowery and Stuyvesant-street, (extending on the northerly side to Eighth-street,) in the city of New York, for the term of twenty-one years. The lessee was to pay a rent of thirty dollars annually together with the taxes, and had the privilege of removing his buildings at the end of the term. The complainant erected three wooden dwelling houses on the lots, during the term. In 1831, the lease having expired, it was continued by parol at an annual rent of $100. In 1836, on a partition of Mr. Stuyvesant's estate, these lots were set off in severalty to one of his daughters, Mrs. Catharine Ann Catlin, the wife of John M. Catlin; upon which the rent was increased to $150 and the taxes. In February, 1839, the complainant agreed for another year's continuance at the same rent, from the first day of May ensuing, and his right to remove the buildings was still continued. In the year 1839, Art-street, including this part of Stuyvesant-street, was widened on its southerly side, from Broadway nearly to the Third Avenue, and about forty feet of the front of the premises on the Bowery were taken for the street. The improvement also cut off about sixty feet of that part of the lots fronting on Eighth-street. The assessment for the damages of the owners of the property taken, was completed by the commissioners of estimate and assessment, in the latter part of May, 1839, and it was confirmed by the Supreme Court, June 5th, 1839.

Mr. Catlin, having notice of the proceedings of the commissioners, attended before them, and claimed that his wife was the absolute owner of the land required for the widening of the street, and of the lots from which the same was to be taken. He made no statement respecting the buildings, and the commissioners, supposing that those were a part of the freehold and owned by Mrs. Catlin, made a single and entire award for the damages to the lots in question, to Mr. Catlin in right of his wife, estimating the same at $9144. In arriving at this result, they had the buildings appraised, and their minutes showed that they allowed for damages to the buildings $1145, and for those to the lands exclusive of the buildings, $7999. But their report to the court contained no such distribution of the award, it being sim-

ply for $9144, over and above the benefit to the lots from the improvement of the street.

No objection to the award was made by Catlin. The complainant did not appear to have been informed of the meeting of the commissioners ; nor of their assessing the damages to Catlin, until after the report was confirmed.

Upon learning the form of the award, he applied to Mr. Catlin to allow him to receive the sum assessed for the buildings, but the latter refused, on the ground that if he had not supposed the entire award to be for the naked land taken, he would not have submitted to the report.

This bill was thereupon filed on the 29th of October, 1839, against Catlin and wife and The Mayor, Aldermen and Commonalty of the city of New York, praying to restrain the payment of the $1145 to the former, and to have the error in the award corrected, and that sum paid to the complainant.

Pending the suit, the sum in dispute was paid into court by the city and invested, and the city counsel received his costs.

The testimony of the commissioners confirmed the entry on their minutes, as to the estimate for the buildings and the land respectively ; and their report showed that no award was made for the damages to buildings, although two of the houses were to be destroyed by the street widening.

The cause was heard on the pleadings and proofs.

*James Smith*, for the complainant.

*C. V. S. Kane*, for Mr. and Mrs. Catlin.

THE ASSISTANT VICE-CHANCELLOR.—At the time the assessment for the widening of Art-street was made, both the complainant and Mrs. Catlin had interests in the land demised which was required for the street; and those interests should have been separately considered by the commissioners of estimate and assessment, and an award made for each.

An award was made to Mrs. Catlin for the whole land taken, and there was no award to the complainant. The report of the commissioners is silent as to the buildings upon the premises.

This however is consistent with their having regarded Mrs. C. as the owner of the buildings. For it is not necessary, nor is it the practice in these assessments, so far as I have observed them, to describe the buildings or other improvements which are situated upon the land taken, and which with the land itself, constitute the subject matter of the award to the owner of both land and buildings. There is no doubt whatever that in the case before me, the commissioners, acting under the erroneous belief that Mrs. Catlin owned the buildings, included in the award made to her, the sum of $1145 for the value of those buildings.

The question is, can this error be remedied in this court.

If there had been a separate award to the complainant, however small, so as to show upon their report that the commissioners had his interest under consideration, I am satisfied that their award could not be impeached or modified after the report was confirmed. (*Turner* v. *Williams*, 10 Wend. 139.)

But here the report itself presumptively awards to Mrs. Catlin, all the damages sustained by the entire freehold, both land and buildings; and the report also shows that no damages were allowed to the person who was the owner of the buildings.

The complainant therefore does not seek to vary the report by showing that the commissioners gave him too little and Mrs. Catlin too much, for their respective interests. The report shows that she obtained the whole interest, and he attempts to prove that he had an interest carved out of the visible freehold, which the commissioners must have regarded in the discharge of their duty. In his proofs, he has gone farther and shown the precise sum which they allowed for the interest which he owned; thereby dispensing with a reference to ascertain the amount, in the event of his obtaining a decree.

The proper mode of assessing these damages, where two or more persons have distinct interests or estates in any parcel of ground required for the street, is to ascertain first the damage to the fee as if it were owned entire and unincumbered by one person, and then to apportion that amount among all the estates and interests which such persons have in the property. (*Wiggin* v. *The Mayor, &c. of New York*, 9 Paige, 19.)

This rule applies to the case of mortgagors and mortgagees,

and to undivided owners, as well as to lessors and lessees. It was so declared as to mortgagees in the *Matter of John-street,* (19 Wend. 659.)

It is well settled that the mortgagee may intervene and claim the award, although the whole amount of it is given to the mortgagor, where no notice of the right of the former is taken in the report. The case of *Astor* v. *Miller,* (2 Paige, 68,) and S. C. *nomine, Astor* v. *Hoyt,* (5 Wend, 603,) is a familiar illustration of that doctrine.

So if in this instance, Mrs. Catlin had in fact been the owner of an undivided half of the land taken, and the award had been made to her alone in the report, describing the whole land, and taking no notice of her co-tenant in common, there is no question but that the latter could have claimed and recovered one-half of the sum awarded.

I do not perceive how it can be otherwise as between the lessor and lessee, where the latter owns the buildings upon the ground which is taken for a street.

The statute clearly contemplates that these awards for damages will sometimes be made to persons who are not entitled to receive the same, and provides a remedy by an action for money had and received. (2 R. L. 418, 419, § 184.)

Whenever the report wholly omits the name of the person who is entitled as part owner or mortgagee, or having an estate in remainder, the same species of proof must be resorted to by such person, to recover under the statute, as is presented in this case. There is no attempt in either case, to open or correct the proceedings of the commissioners.

In this instance they had no evidence before them showing that Mrs. Catlin did not own the buildings, and their award upon the facts before them was right.

Yet the proof is unquestionable that the award was in part for the buildings, and that the complainant was the owner of the same. So that if Mrs. Catlin receives that part of the sum awarded, she will receive money which of right belongs and ought to be paid to the complainant.

It is objected by the defendants, that the complainant ought not to be permitted to claim any part of the award, because he

did not present his claim to the commissioners. And that if he had brought forward his demand for damages, and the commissioners had entertained it, then Mrs. Catlin would not have been led into the belief that the award to her was for the land exclusively, and would have insisted on a greater sum for her own damages. On the other hand, it is alleged that Mr. Catlin who acted for his wife in this affair, fraudulently suppressed the complainant's ownership of the buildings.

As to the latter charge, the bill does not contain it, and there is not a particle of evidence of any fraud on the part of Mr. Catlin. It would have been prudent in him on presenting the evidence of his wife's title to the land, to have informed the commissioners of the complainant's right to the buildings. He ought to have been aware that the evidence which he furnished, when unexplained, showed his wife to be the owner of the erections as well as the land itself.

His omission to give this information, was no doubt inadvertent; but at the same time, it was a neglect quite equal to the complainant's omission to appear before the commissioners with his claim. It is apparent from the testimony of one of those officers, that if Mr. Catlin had mentioned the separate ownership of the buildings, they would have notified the complainant to appear. Thus, Mr. Catlin's neglect prevented him from receiving a direct notice from the officers themselves; and there is no proof that he had any actual notice of the proceeding, except his own statement in the bill that he heard the buildings were separately appraised at a price with which he was satisfied.

There is no reason upon the score of the complainant's negligence, to preclude him from pursuing his remedy for the damages awarded in respect of his property.

It is next objected, that he had a perfect remedy at law. This point not being raised in the answer, comes too late to be entertained. I do not express any opinion as to its being valid.

The complainant is entitled to receive the sum which was awarded in respect of his buildings on the premises.

This sum is so clearly ascertained, that no reference is necessary.

I do not think it is proper for me to review the commis-

sioners decision as to the value of the buildings. Whether it were right or wrong, it did not affect the amount which they allowed for the naked land taken. They awarded precisely the same for that, as they would have done if no buildings had ever been erected there. If any persons have a right to complain of an excessive valuation of the buildings, it is the class of persons who were assessed for benefit.

It is shown that at the time of the award the interest in the land in question was in Gerard Stuyvesant as the trustee of Mrs. Catlin ; and that before this bill was filed, he had transferred the whole award to Helen M. Catlin.

The defendants interpose no objection on this ground, but the court cannot make a decree for the payment of the fund, in the absence of those parties. Nevertheless, as the cause was ably and fully argued on the part of the defendants, I have given my views upon its merits, without awaiting the presence of the assignees.

Decree that the suit stand over for parties, and reserving all further questions and directions.

---

The complainant filed a supplemental bill against Mr. Stuyvesant, in whom it appeared the claim in controversy was vested in behalf of Mrs. C. A. Catlin ; and the cause came on upon the supplemental bill and the equity reserved, on the second day of December, 1845.

*James Smith*, for the complainant.

*C. V. S. Kane*, for the defendants.

THE ASSISTANT VICE-CHANCELLOR.—On the principal point, the case as against Mr. Stuyvesant, stands on the same footing that it did when it was before me in April last; and the complainants are entitled to a decree. In regard to costs, J. M. Catlin has had no interest in the question, and was not made a party in respect of the relief sought. He cannot be subjected to costs on the score of the fraudulent conduct now imputed to him, be-

cause, if it were proved to be fraudulent, there is no charge of fraud in the bill to which the proof would be applicable.

Mrs. Catlin, the real party in interest, is a married woman, and therefore not chargeable with costs. And her trustee has done nothing more than his duty required, in setting up a title, which on the record was presumptively valid in her favor, and then submitting her rights to the judgment of the court.

The fund with its increase, must be paid to the complainants, and the respective parties must pay their own costs of suit.